UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMBER L. TYLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:13-cv-771-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

Plaintiff Amber Tyler applied on March 17, 2010, for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since August 1, 1999. An administrative law judge ("ALJ") held a hearing by video on October 18, 2011, at which Ms. Tyler appeared and testified. On October 27, 2011, acting for the Commissioner of the Social Security Administration, the ALJ denied Ms. Tyler's claim, finding that she is not disabled. The Appeals Council denied review of the ALJ's decision on March 7, 2013, rendering the ALJ's decision for the Commissioner final. Ms. Tyler timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. This matter was referred under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to the appropriate disposition. (Dkt. 8).

Ms. Tyler contends that the ALJ's decision is not supported by substantial

evidence. She argues the ALJ erred by: (1) failing to create an accurate RFC[1] assessment that incorporated all of her impairments; and (2) erroneously evaluating her credibility while failing to properly incorporate her subjective complaints of pain. As addressed below, the court finds that the ALJ's findings are supported by substantial evidence in the record. The Commissioner's decision is therefore AFFIRMED.

## Standard for Proving Disability

To be eligible for disability benefits under the Social Security Act, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2] There must be medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and disability may not be adjudged only by a claimant's description of her symptoms. 20 C.F.R. § 416.908.

The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for

---

[1] Residual functional capacity (RFC) represents what an individual can still do, despite his or her limitations. 20 C.F.R. § 404.1545(a).

[2] The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

2

determining disability.  20 C.F.R. § 404.1520.  Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then she is not disabled, despite her current medical condition.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The impairment must also meet the twelve-month duration requirement.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, education, and

RFC; if so, then she is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five. 20 C.F.R. § 404.1560(c)(2); *Taylor v. Barnhart* 425 F.3d 345, 352 (7th Cir. 2005).

## Standard for Review of the ALJ's Decision

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir.

2004).  In addition, he must "build an accurate and logical bridge from the evidence to [his] conclusion," and provide some glimpse into his reasoning.  *Dixon*, 270 F.3d at 1176.

## **The ALJ's Sequential Findings**

The ALJ determined at step one that Ms. Tyler had not engaged in substantial gainful activity since March 3, 2010, the application date.  At step two, the ALJ identified the following severe impairments: bipolar II disorder, anxiety, and depression (R. 19).  At step three, the ALJ evaluated Ms. Tyler's severe impairments against the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and found "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."

For purposes of steps four and five, the ALJ adopted the following residual functional capacity (RFC) "to perform the full range of work at all exertional levels but with the following non-exertional limitations", as defined in 20 C.F.R. § 404.1567(b), specifically:

> The claimant is limited to simple, routine, and repetitive tasks requiring only simple decision making, which involves choosing amongst a limited number of options rather than coming up with creative solutions to novel situations; and the work should involve no complex or fast-paced verbal communication.  There should also be infrequent and limited changes in the work setting in terms of workplace and work processes; and the claimant's exercise of judgment should be limited to the concrete rather than the abstract, as she is better able to deal with things rather than people.  The claimant cannot be in direct public service positions whether in person or over the telephone but the claimant can have brief, superficial, and incidental interaction with the public.  The claimant can have only

5

brief and superficial interaction with coworkers with no team or tandem tasks. The claimant is prohibited from workplace hazards, including driving or operating moving machinery; and cannot work around unguarded hazardous machinery, unprotected heights, exposed flames or large bodies of water. (R. 22).

At step five and based on the opinion of the vocational expert, the ALJ decided that Ms. Tyler is capable of making a successful adjustment to work that exists in significant numbers in the national economy. Accordingly, the ALJ found at step five that she is not disabled.

## Analysis

A. **The ALJ's Residual Functional Capacity finding is supported by substantial evidence.**

Ms. Tyler contends the medical evidence does not support the ALJ's RFC. She also contends the ALJ failed to incorporate all of her limitations into his RFC. In support of her argument, Ms. Tyler merely recites the medical record (and subsequently does the same for her credibility argument), and states that the medical record supports her inability to "work in close proximity with the public, but also with supervisors and coworkers." Pl.'s Br. at 8. The court finds her arguments conclusory and unpersuasive.

In assessing an RFC, "an ALJ must consider all of the evidence and must explain its decision such that it may be meaningfully reviewed." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). The ALJ relied on the opinions of the state agency psychological consultants, Dr. F. Kladder, Ph.D, and Dr. Joseph Pressner, Ph.D, and gave greater weight to their opinions that concluded Ms. Tyler could perform simple routine work in a competitive work environment. He gave little weight to

6

the opinion of Dr. Coleman, her treating physician.[3]  However, he did not ignore Dr. Coleman's opinion, but incorporated in the RFC certain limitations Dr. Coleman referenced.

The ALJ's RFC determination makes it clear that he considered Dr. Coleman's opinion that Ms. Tyler would have extreme limitations in her ability to complete a normal workday by including certain "non-exertional limitations." (R. 24, 410).  The ALJ explained in his findings that she "would also need not be in direct public service positions and have only superficial interaction with coworkers because of her limitations in social functioning caused by bipolar disorder and anxiety." (R. 25.)  He also noted her improvement with symptoms while on medication prescribed by Dr. Coleman.  In evaluating the medical evidence from Dr. Coleman, the ALJ noted that Ms. Tyler did not have any treatment notes for her alleged mental impairments until March 2010.  The ALJ went on to summarize Dr. Coleman's medical records, which concluded in July 2011 (R. 20-21, 23).

The ALJ also cited Dr. Coleman's opinion in his findings, which states that Ms. Tyler would have "marked limitation in her ability to sustain a schedule, work in coordination with others, and interact appropriately with the public." (R. 24).  But in assessing the RFC, the ALJ gave little weight to Dr. Coleman's opinions, finding they are inconsistent with the record, and more specifically, inconsistent with the opinions of the state agency psychological consultants.  In May 2010, Dr.

---

[3]   The court notes that Ms. Tyler is not arguing that the treating physician should have been given controlling weight, but rather that the ALJ failed to include all of her limitations in his RFC.

Kladder opined that Ms. Tyler was capable of performing simple, routine tasks as evidenced by her mental ability to take care of children, perform, basic chores, prepare meals for herself and her children, take care of personal grooming, and drive (R. 404). Dr. Kladder also considered evidence of some impaired social functioning, but went on to state that Ms. Tyler does "live with kids and family and gets along with them." Dr. Kladder provided further support for the ALJ's RFC by opining that Ms. Tyler "appears to have the memory and concentration needed for simple, routine tasks," as shown by her ability to fill out the ADL forms thoroughly and accurately, her ability to take care of children, and being able to drive to necessary appointments. Dr. Kladder's opinion was then reaffirmed by that of Dr. Pressner, offered on September 28, 2010 (R. 408). The ALJ gave some weight to Dr. Pressner's opinion, which also considered the medical evidence of physical limitations and the opinions of the state agency consultants, who found Ms. Tyler had no severe physical impairments (R. 24).

The record reflects that the ALJ built a logical bridge to his RFC finding by relying on the opinion evidence of the state agency psychological consultants and sufficiently articulating his justification to give little weight to the opinions of Ms. Tyler's treating doctor, Dr. Coleman, and instead relying on those of the consulting physicians. The law does not require an ALJ to accord a treating physician's opinion more weight than a consulting physician's opinion. *Schmidt v. Astrue*, 496 F.3d 883, 842 (7th Cir 2008). The court finds his RFC determination is supported by substantial evidence in the record.

### B. The ALJ's credibility assessment was sufficient and supported by substantial evidence.

Ms. Tyler also contends that the ALJ failed to make a credibility determination that was supported by substantial evidence. An ALJ is required to consider a claimant's statements about her symptoms and how they affect her daily life and ability to work. 20 C.F.R. § 404.1529(a). He is not, however, required to accept the claimant's statements blindly, but must sufficiently explain his reasons for the finding on credibility, supported by the evidence in the record. *Skarbek v. Barnhart,* 390 F.3d 500, 505 (7th Cir. 2004). The ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008).

The ALJ made an initial perfunctory statement on Ms. Tyler's credibility, which has repeatedly been criticized by the Seventh Circuit as "unhelpful to a reviewing court." (R. 22); *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012). *See also Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010). This will not disqualify his ultimate determination, however, if he "otherwise points to information that justifies his credibility determination." *McKinzey v. Astrue,* 641 F.3d 884, 890-91 (7th Cir. 2011). Here, his credibility assessment continues with a proper assessment to which this court must give deference.

Ms. Tyler, once again, recites her medical record, concluding she would be unable to work on a full-time basis, while also arguing that the ALJ failed to consider her subjective complaints of pain. She contends that the ALJ improperly based his credibility determination on the fact that she could perform full-time work

9

because she took care of her son, performed house chores, cooked, and grocery shopped. Pl.'s Br. At 11. (R. 20, 24, 244). The court disagrees. The ALJ discussed daily living activities in addition to other factors provided in SSR 96-7p, including Ms. Tyler's symptoms, course of treatment, and effectiveness of medications (R. 24). Moreover, he cited previous instances in the record of inconsistencies and exaggerated symptoms, and noted her poor work history prior to any documented evidence of mental impairments (R. 23-24). She also claimed to have disabling headaches and a severe back impairment prior to the hearing, but subsequently abandoned those claims. In addition, she testified at the October 2011 hearing that she had panic attacks "a lot, a couple times a day." (R. 22, 57-58). But she previously stated in April 2010 and May 2011 that her anxiety "had improved with the use of medication." (R. 24). The ALJ noted a discrepancy with this testimony, while also noting that she had previously experienced anxiety only at appointments in July 2010 and in March, May, and July 2011 (R. 24). The ALJ also cited to portions of the record where Ms. Tyler had noted "improvement of her other symptoms, including mood swings, racing thoughts, and night terrors with the use of medication," which contradicted her hearing testimony regarding the severity and frequency of her symptoms. *Id.* The ALJ amply considered and presented evidence of Ms. Tyler's anxiety and symptoms and considered the improvement of her symptoms with medication based on substantial evidence in the record. He sufficiently articulated his reasoning, and Ms. Tyler has not demonstrated that his credibility assessment was "patently wrong."

10

## **Conclusion**

For the foregoing reasons, the Commissioner's decision is AFFIRMED because it is supported by substantial evidence adequate to support his conclusion. Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

IT IS SO RECOMMENDED.

Date: 08/05/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

All ECF-registered counsel of record via email generated by the court's ECF system